1  Jennifer Marie Jones
   Mailing address: P.O. Box 1320
2  Quartzsite, Arizona, 85346
3  Residence address: La Posa North LTVA
   Quartzsite, Arizona, 85346
4  (legal residence, but no mail service)
5  (928) 785-6318
6  thedesertfreedompress@yahoo.com

7

8              IN THE UNITED STATES DISTRICT COURT

9                  FOR THE DISTRICT OF ARIZONA

10

11
   Jennifer Marie Jones,                )
12                                       )
13          Plaintiff,                   )         2:12-CV-1383-JAT
                                         )
14  v.                                   )
                                         )         COMPLAINT
15  Town of Quartzsite;                  )         §1983 ACTION
16  Jeffrey Gilbert and Sondra Gayle )
     Gilbert, Husband and Wife;          ) JURY TRIAL DEMANDED
17  Officer Rick Paterson, #43, and      )
    Jane Doe Paterson, Husband and )
18  Wife;                                )
19  Officer Fabiola Garcia, #42, and     )
     John Doe Garcia, Husband and        )
20  Wife (or Wife and Husband);          )
21  Joe Winslow;                         )
    Albert Johnson and Rhonda            )
22  Johnson, Husband and Wife;           )
23  Alexandra Taft;                      )
    Individual Does I-X                  )
24                                       )
25  Defendants.                          )
   _____       )

26         Plaintiff, Jennifer Marie Jones, for her Complaint against all Defendants alleges as
27  follows:
28
                              **Jurisdiction**


                                    -1-

1.      This action is brought pursuant to 42 U.S.C. § 1983.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(3) and (4). This Court also has jurisdiction pursuant to 28 U.S.C. §§ 2201 and 2002 to declare the rights of the parties and to grant all further relief found necessary and proper. Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 (a).

2.      This Court has personal jurisdiction over the defendants, who are located in the District of Arizona.

3.      Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391(a) in that the defendants are subject to personal jurisdiction within the District of Arizona and the events that give rise to this action occurred within the District of Arizona.

4.      Plaintiff, Jennifer Marie Jones, is an adult residing within the County of La Paz, Town of Quartzsite, State of Arizona.

5.      Defendant Town of Quartzsite (referred to as "the Town") is a municipality organized under the laws of the state of Arizona and owns, operates, manages, directs and controls the Quartzsite Police Department, which employed other defendants.

6.      Defendant Jeffrey Gilbert (referred to as "Chief Gilbert") was at all relevant times the Chief of the Quartzsite Police Department, and employed by the Quartzsite Police Department. Defendants Jeffrey Gilbert and Sondra Gayle Gilbert, are and were, at all times relevant, husband and wife residing in La Paz County,

Arizona.  At all times relevant, Defendant Jeffrey Gilbert held the position of Chief of Police in and for the Town of Quartzsite. All actions taken by Defendant Jeffrey Gilbert were on behalf of the marital community. On June 28, 2011, Chief Gilbert, acting under color of law and pursuant to the policies of the Town of Quartzsite, approved of, directed, and supervised the unlawful arrest and imprisonment, without probable cause, of Plaintiff Jones, on account of her perceived political expression, because of her opposition to the policies of the Town and of Chief Gilbert, because of her activities as a journalist and publisher which are critical of the Town and of Chief Gilbert, and because of her running for office against incumbents on the Town Council.  Chief Gilbert is named herein in his individual capacity.

7.     Defendant Officer Rick Paterson, #43 (referred to as "Officer Paterson"), was at all relevant times a Police Officer employed by the Quartzsite Police Department. Defendants Rick Paterson and Jane Doe Paterson, are and were, at all times relevant, husband and wife residing in La Paz County, Arizona.  At all times relevant, Defendant Rick Paterson held the position of Police Officer in and for the Town of Quartzsite.  All actions taken by Defendant Rick Paterson were on behalf of the marital community. On June 28, 2011, Defendant Officer Paterson, acting under color of law and pursuant to policies of the Town, participated in the arrest without probable cause, of Mrs. Jones, on account of her perceived political expression, because of her opposition to the policies of the Town and of Chief Gilbert, because of her activities as a journalist and publisher which are critical of the Town and of Chief Gilbert, and because of her running

for office against incumbents on the Town Council.  Defendant Officer Paterson is named herein in his individual capacity.

8.      Defendant Officer Fabiola Garcia (referred to as "Officer Garcia"), was at all relevant times a Police Officer employed by the Quartzsite Police Department. Defendants Fabiola Garcia and John Doe Garcia, are and were, at all times relevant, husband and wife (or wife and husband) residing in La Paz County, Arizona.  At all times relevant, Defendant Officer Fabiola Garcia held the position of Police Officer in and for the Town of Quartzsite.  All actions taken by Defendant Fabiola Garcia were on behalf of the marital community.  On June 28, 2011, Defendant Fabiola Garcia, acting under color of law and pursuant to policies of the Town, participated in the arrest without probable cause, of Mrs. Jones, on account of her perceived political expression, because of her opposition to the policies of the Town and of Chief Gilbert, because of her activities as a journalist and publisher which are critical of the Town and of Chief Gilbert, and because of her running for office against incumbents on the Town Council.  Defendant Officer Garcia is named herein in her individual capacity.

9.      Defendant Joe Winslow (referred to as "Defendant Winslow"), was at all relevant times a sitting member of the Quartzsite Town Council.    On June 28, 2011, Defendant Winslow acting as a member of the Town Council, and pursuant to policies of the Town, initiated an unlawful vote by members of the Town Council to have Mrs. Jones removed from the meeting, while she was speaking during the call to the public portion of the meeting, which caused the subsequent

-4-

arrest of Mrs. Jones without probable cause, on account of her perceived political expression, because of her opposition to the policies of the Town and of Chief Gilbert, her activities as a journalist and publisher which are critical of the Town and of Chief Gilbert, and because of her running for office against incumbents on the Town Council. Defendant Councilman Winslow is named herein in his individual capacity.

10.     Defendant Albert Johnson (referred to as "Defendant Johnson"), was at all relevant times the Assistant Town Manager for the Town of Quartzsite.     Defendants Albert Johnson and Rhonda Johnson, are and were, at all times relevant, husband and wife.   At all times relevant, Defendant Albert Johnson held the position of Assistant Town Manager in and for the Town of Quartzsite.   All actions taken by Defendant Albert Johnson were on behalf of the marital community.   On June 28, 2011, Defendant Johnson, acting as Assistant Town Manager, and pursuant to policies of the Town, after the unlawful vote by members of the Town Council to have Mrs. Jones removed from the meeting, gestured with his thumb to the officers to remove Mrs. Jones from the meeting while she was peaceably speaking during the call to the public portion of the meeting, which contributed to the subsequent arrest of Mrs. Jones without probable cause, on account of her perceived political expression, because of her opposition to the policies of the Town and of Chief Gilbert, her activities as a journalist and publisher which are critical of the Town and of Chief Gilbert, and because of her running for office against incumbents on the Town Council. Defendant Johnson is named herein in his individual capacity.

11.     Defendant Alexandra Taft (referred to as "Defendant Taft"), was at all relevant times the Town Manager for the Town of Quartzsite.   On June 28, 2011, Defendant Taft, acting as Town Manager, and pursuant to policies of the Town, encouraged and gave her verbal and non-verbal consent, by nodding in the affirmative as an instruction to Chief Gilbert, in support of the removal Mrs. Jones from the meeting, while Mrs. Jones was peaceably speaking during the call to the public portion of the meeting, which contributed to the subsequent arrest of Mrs. Jones without probable cause, on account of her perceived political expression, because of her opposition to the policies of the Town and of Chief Gilbert, her activities as a journalist and publisher which are critical of the Town and of Chief Gilbert, and because of her running for office against incumbents on the Town Council.  Defendant Taft is named herein in her individual capacity.

12.     The fictitiously named Defendants Individual Does I-X in the caption to the Complaint are individuals who may have in some manner contributed to Plaintiff's injuries and damages and are therefore liable.  The true names for said Defendants are unknown to Plaintiff at this time.  Once the identities of these Defendants are discovered, leave of Court will be sought to amend this Complaint accordingly.  The Doe defendants are named herein in their individual capacities.

## Complaint

### I.     Factual Allegations

13.     On October 14, 2010, The Quartzsite Town Council underwent training from the League of Cities and Towns.  The instructor was Attorney William Sims.

1   During that training, which was held in the Town Council chambers and was open to the
2   public, Mr. Sims cautioned the Chief of Police about stepping in and removing people
3   from the podium when there are any violations of meeting rules and laws by people
4   speaking at the podium, telling the Chief that if the Mayor does not order someone
5   removed, and the Chief removes them anyway, then there will be a lawsuit for wrongful
6   arrest.   Mr. Sims also told the Town Council that it is the Mayor who presides over
7   meetings and it is the Mayor who gets to determine if a violation of the open meeting
8   laws has occurred – it's his call.   And on two separate occasions during the training Mr.
9   Sims told the Town and  Chief Gilbert that if the Mayor fails to enforce the rules, censure
10  of the Mayor is the remedy, as well as documenting failures to follow the law, and unless
11  the Chief is convinced that actions at the podium threaten someone's safety, he should
12  not intervene.  A video of that portion of the training can be viewed online at:
13  http://www.youtube.com/watch?v=l1D3XQ5wBE4&lr=1

14          14.     At the 2:55 mark of that video, in response to a question by Chief Gilbert
15  on using a $500.00 fine against people for violation of meeting rules, Mr. Sims states,
16  while addressing the Town Council, that "the goal should be listening to their views [the
17  public] and trying to implement them, and using your professional staff to help you.  And
18  the goal should be communication first."

19          15.     At the 3:25 mark of the video of the training session, Chief Gilbert
20  comments on when law enforcement can step in, telling Sims that "there are certainly
21  times, at least in our meetings, when there probably should be some interjection from the
22  Mayor, whoever is presiding over the meeting, and it's not happening.  At some point in
23  time, depending on the circumstances, I may eventually make that decision, or one of our
24  other officers may make that decision [to remove the speaker at the podium], when it
25  becomes a matter of safety to the public, or we may feel there's going to be some, some
26  sort of violence could break out, we may step in, somewhere along the line, but I
27  certainly agree with you, in the same manner, that once I have to make that decision to do
28

-7-

1   that, they've failed [the Town Council] and it should never get to that position.  I should

2   not have to come up here and … you know, interfere."

3        16.     Mr. Sims responds by saying "I'm looking at the attendees to this meeting

4   [which was open to the public], they don't really scare me.  I think you need to think long

5   and hard before you step into the law enforcement and escorted them out.  I do agree with

6   you that you as law enforcement have the right to preserve public safety and order, but

7   this doesn't look like the [unintelligible] gang out here … [turns to the Town Council]

8   What the Chief is saying – he does have a duty as a law enforcement officer to enforce

9   the peace. But I think, again, if it comes to that - now I work with the pool [the insurance

10  pool] - there will be a lawsuit.  If the chief executive officer [the Mayor] didn't do

11  anything, and you stepped in and threw me out, they're gonna get you for false arrest and

12  all that.  Just so you know, it will get ugly … At the end of the day, we have to honor

13  democracy.  And the voters voted these people into the positions they're in and we have

14  to allow them to discharge their duties.  And I hope they do.  You want to adopt

15  procedures to encourage that kind of conduct.  And so you can have a clear set of rules

16  that can be applied, to give people an opportunity to implement and enforce those rules.

17  … **censure** [of the Mayor if he fails to enforce the rules] **is the next step**.   If you as the

18  Chief truly believe that the activities at this podium could threaten a person's safety, I do

19  agree that you probably have the right as law enforcement to step in" (emphasis added).

20       17.     Mr. Sims later, beginning at the 10:00 mark, tells the Town Council and the

21  Chief that in case of a violation of the open meeting laws, "the voters elected - regardless

22  of who it is – **the Mayor presides at the meeting, he or she gets to make the calls.**

23  **And I'm sorry, that's the rules.  But he or she has to follow the laws.  I've discussed**

24  **the idea that censure** [of the Mayor if he is not enforcing rules]**, that's an option.  The**

25  **other option would be to create a record, that we're violating the open meeting law.**

26  **That's an option"**.  (emphasis added)

27       18.     Despite having that training, with very clear instruction that it is the Mayor

28  who presides at meetings and who makes the call on enforcement of meeting procedures

and of open meeting laws, and that if the Mayor fails to do so the options for the Town Council are to censure the Mayor and/or to document the violations of the open meeting laws, the Town Council and Chief Gilbert have repeatedly ignored that training, instruction, and advice, including during the meeting on June 28, 2011 where Plaintiff Mrs. Jones was forcibly removed from the podium and arrested.

19.     On June 28, 2011, Plaintiff Jennifer Jones was present in the audience of a Quartzsite Town Council meeting.

20.     Defendant Chief Gilbert, Defendant Officer Paterson, and Defendant Officer Garcia were on duty and present at that Quartzsite Town Council meeting.

21.     Defendants Joe Winslow, Albert Johnson, and Alexandra Taft were also present and participating, in their official capacities, in that Quartzsite Town Council meeting.

22.     The Town of Quartzsite retained command, control, and authority over, and was responsible for, the actions of the Defendants present at that Town Council meeting.

23.     After the Town Council had completed all of its scheduled agenda business, the public comment portion of the Town Council meeting known as Communications/Petitions & Citizen Comments (commonly referred to as "call to the public") began.

24.     This "call to the public" time is designated to allow for comments, questions or concerns to be raised by citizens.

25.     After waiting her turn, Mrs. Jones approached the microphone and waited to be recognized to speak by Mayor Ed Foster. Once Mayor Foster recognized her, Mrs.

Jones addressed the Town Council and the audience and began to speak, criticizing

decisions and actions of the Town Council.

26.     Less than a minute after Mrs. Jones began to speak, Defendant Winslow, a

member of the Town Council who was seated among the rest of the Town Council at the

meeting, interrupted her, despite the fact that Mrs. Jones had been recognized to speak by

the Mayor, Ed Foster and was peaceably doing so.  Councilman Winslow, against

Roberts's rules of order - and in direct contradiction of the above noted training he and

the rest of the Council had received from Mr. Sims from the League of Cities and Towns,

on October 14, 2010, to the effect that it is up to the Mayor to enforce the rules -

attempted to make a motion before the Town Council to have Mrs. Jones removed even

though she was speaking during her turn to do so, and was not threatening anyone's

safety, but was merely addressing the council and public collectively.    These events,

leading up to and including Mrs. Jones' arrest, were recorded on video, which is available

online at: http://www.youtube.com/watch?v=YPY3BIsVQq8

27.     On that video, beginning at the 53 second mark, Defendant Winslow can be

heard saying, ""I make a motion that Mrs. Jones be removed from the duration of this

meeting. All those in favor …"  In response, Mayor Foster then says "the lady has the

floor here, she's been recognized, she has the floor."

28.     Defendant Winslow then asserts "she has violated the procedures, we have

passed – I believe we have a majority." In the video, Defendant Winslow clearly appears

agitated at the mere fact that Mrs. Jones was making statements critical of the Town

Council's prior actions.   Defendant Winslow then tells Mrs. Jones "You may leave, or you may be escorted out" (at the 1:15 mark of the video).

29.     Seconds later, at the 1:27 mark on the video, Officer Fabiola Garcia can be seen approaching Mrs. Jones, and trying forcefully to remove the microphone from Mrs. Jones' hand, just over a minute into her allotted time.  Officer Paterson and Chief Gilbert then approach Mrs. Jones, but after numerous objections from the Mayor who informed Officer Garcia and Chief Gilbert that Mrs. Jones has the floor and "is exercising her First Amendment rights," Officer Garcia let's go of Mrs. Jones and the microphone and the officers' back away from her. This initial first contact with Mrs. Jones by the Quartzsite police officers was in itself illegal and highly unconstitutional.

30.     During that first contact between the police officers and Mrs. Jones, Defendant Winslow can be heard in the background saying "all those in favor, say 'Aye'" in an apparent attempt to continue a vote on his motion to have Mrs. Jones removed from the meeting.

31.     After the police backed off, Mayor Foster told Mrs. Jones she may continue.   However, shortly after Mrs. Jones resumed her comments, Defendant Winslow can be heard to say "the majority of this council has moved that she be removed …" and in response, Mayor Foster points out that there is no motion before the Council because "there cannot be motions during call to the public" (at 2:34 of video).

32.     Defendant Johnson, the Assistant Town Manager, can be seen gesturing with his thumb to the officers to take Mrs. Jones away. (This can be seen at

approximately 2:55 into the video).  This thumb gesture was clearly directed at the Chief of Police, Officer Paterson, and Officer Garcia.  Later, during the Arizona Department of Public Safety (DPS) investigation, Defendant Johnson acknowledged that he had made the gesture to direct Chief Gilbert to remove Mrs. Jones from the podium.

33.    Defendant Taft also gave her consent to having Mrs. Jones forcibly removed from the meeting.  Later, in a sworn written response to questions by the Arizona Department of Public Safety, during its formal investigation, Defendant Taft admits that "after Pamela [Town Attorney] stated the Council had the right to make the motion [to remove Mrs. Jones] and vote, I then nodded to the Chief to proceed to remove Mrs. Jones from the podium." (See DPS Report, Part 3, page 18, available online at: http://desertmessenger.blogspot.com/2012/02/dps-report-released-on-quartzsite-chief.html).

34.    All three officers then approached Mrs. Jones for the second time and forcibly removed the microphone from her hand.  The Mayor then told Chief Gilbert, "you are in violation of my rules of order, Chief" (at 3:15 mark of video).  On the video, Chief Gilbert can be heard to say "will you let me speak?" to which Mayor Foster responds "no, I didn't recognize you, she's at the podium, she has the mike."  Officer Garcia then grabs Mrs. Jones by the wrists as Mayor Foster tells her "Sgt. Garcia, you are in violation of my rules of order" (at 5:32-35 of video).    Then  Officers  Paterson and Garcia, under the direct supervision of Chief Gilbert,  and in direct violation of the orders of the Mayor, forcibly removed Mrs. Jones from the building, roughly and

1   needlessly placing her in a compliance hold which injured her left arm.

2   35.   As Mrs. Jones is being removed from the building, Defendant Winslow

3

4   can be heard on the video to say "call for order" to which the Mayor replies "a call for

5   censorship is what you're calling for Mr. Winslow."

6   36.   All of the above actions of the defendants were in direct contradiction of

7

8   the training and advice they received from League of Cities and Towns instructor,

9   attorney William Sims during the October 14, 2010 training session in Town Chambers.

10  All defendants directly ignored and contradicted the Mayor's rulings and decisions as he

11

12  presided over the meeting and removed Mrs. Jones from the podium, despite the fact that

13  the Mayor repeatedly confirmed that she had the floor, had a right to speak, with the

14  Mayor making no determination that Mrs. Jones was in violation of any rules or laws or

15

16  that she needed to be removed, and despite the obvious fact that Mrs. Jones posed no

17  threat whatsoever to anyone's safety, and had made no threats to anyone's safety.   She

18  had simply exercised her constitutional rights to free speech, during the time allotted for

19

20  public comment, and after having been duly recognized – repeatedly - by the presiding

21  officer, the Mayor.

22  37.   The Arizona Attorney General's Office, in a subsequent investigation into

23

24  allegations that the Town Council had violated Arizona's Open Meting Laws ("OML")

25  reviewed the removal of Mrs. Jones from the podium at the June 28, 2011 meeting, and

26  found that her removal had been in violation of the Open Meetings Law.   In those

27  findings, which were sent to the Town Council in a letter dated December 9, 2011,

28

-13-

Assistant Attorney General Christopher A. Munns states that: "At no time did any Councilmember or staff member ask Ms. Jones to turn around or take her seat. Although her behavior may have irritated or offended members of the Council, the Council should not have removed Ms. Jones without first giving her a warning and an opportunity to cease her disruptive behavior. Accordingly, the foregoing incident violated the OML's requirement that the public be allowed to attend public meetings of the Council."

38.    During the subsequent investigation by the Arizona Department of Public Safety, members of the Town Council admitted, in writing, that at no other time had anyone been forcibly removed from the podium simply for removing the microphone from the stand and turning toward the audience while they spoke.   Only Mrs. Jones has been so treated.

39.    In the process of this arrest, and at the hands of the arresting officers, Jennifer Jones received substantial injury to her left elbow, which was twisted into an unnatural position.

40.    Once outside the building, Officers Paterson and Garcia handcuffed Mrs. Jones' hands behind her back and escorted her to a holding cell and police office at the back of the Town Hall building.

41.    Mrs. Jones was charged with disorderly conduct.  That charge was later dismissed on September 29, 2011.

42.    After being escorted to the holding cell/police office area at the rear of the Town Hall that night of June 28, 2011, Mrs. Jones complained of excruciating pain in

her left elbow, and Officer Garcia removed the handcuffs and called for an ambulance from River City Medical.

43.     Mrs. Jones was then transported by ambulance to the La Paz County Regional Medical Center Emergency Room where an X-Ray was taken of her elbow and she was diagnosed with a sprained arm/elbow.  The doctors wrapped Mrs. Jones' arm in bandages and placed it in a sling, which Mrs. Jones was instructed to wear at all times. The doctors also gave her prescription pain medication and referred her to an orthopedic specialist.

44.     A follow up doctor's visit with that orthopedic specialist diagnosed her with a stress fracture in her left elbow.   As a result, Mrs. Jones suffered severe pain and complete and debilitating loss of function in her left arm for over a month, and was forced to keep it in a sling for over six weeks.

45.     To this day, Mrs. Jones suffers intermittent sharp, stabbing pain in her left elbow, which causes her to drop whatever is in her hand, and reduced ability to use her arm, including a marked reduction in function at her job as a pet groomer, which requires lifting heavy dogs and holding them still while working on them, among other very physical work, all actions Mrs. Jones now has great difficulty doing, or is unable to do at times.

46.     Mrs. Jones can only work for a few hours per day before having to stop because of the injury.   In addition to a great reduction in her ability to ply her trade, Mrs. Jones has also suffered a reduced quality of life because of the injury.  In addition, she

1    has incurred substantial medical bills from the ambulance company, the hospital, and the

2    orthopedic specialist, which she is unable to pay, resulting in the bills going to

3    collections.

4

5        47.    This June 28, 2011 arrest was part of an ongoing and escalating pattern of

6    harassment against Mrs. Jones by Chief Gilbert, some of his officers, and members of the

7    Town Council and staff, including the defendants in this instant complaint, since Mrs.

8    Jones became a vocal critic of the Town Council members and the Chief of Police, as

9    well as a political opponent of members of the Town Council.

10

11       48.    Mrs. Jones' first false arrest occurred on November 19, 2010, within

12   several days after a town council meeting where Mrs. Jones publicly announced that she

13   would be running for a Town Council position, and announced that she was starting an

14   independent newspaper, The Desert Freedom Press.  Since starting her paper, Mrs. Jones,

15   in addition to running her own dog grooming business,  has been working as a part-time

16   professional journalist and publisher of the Desert Freedom Press, which is both a hard

17   copy and online newspaper, with paid advertisers, published bi-monthly,  with a peak

18   circulation of 20,000 copies at the height of the tourist season.    On May 19, 2012, Mrs.

19   Jones was nominated for the Arizona Press Club "Sledgehammer" Award for her

20   reporting on the suspicious goings-on in the Quartzsite government.

21

22       49.    The harassment of political opponents in Quartzsite has not been confined

23   to Mrs. Jones, as is well documented in a May 10, 2011 letter issued to the Town Council

24   and Town Manager by ten out of thirteen of the officers serving in the Quartzsite Police

-16-

Department, under the letterhead of the Quartzsite Police Officers Association (available online at http://www.scribd.com/doc/59823583/Quarlzsite-Police-Officers-Association-Letter-regarding-Police-Chief).

50.     That letter from the ten Quartzsite officers stated that Chief Gilbert intentionally and improperly targets citizens for political persecution and retaliation in the form of trumped up and fabricated citations and arrests.  In that official letter, those ten whistle-blowing officers expressed a formal vote of no-confidence in the Chief, and stated that he should be removed from office.

51.     That letter from the ten Quartzsite police officers was delivered to each member of the Town Council and also to the Town Manager.

52.     The letter from the ten Quartzsite police officers was also delivered to the Arizona Peace Officer Standards and Training Board (AZPOST) on May 11, 2011, requesting an investigation into wrongdoing by Chief Gilbert.

53.     The officers also filed a complaint and with the Arizona Department of Public Safety, Major Crimes Division.

54.     Among the allegations brought by the officers against Chief Gilbert in that May 10, 2011 letter were that: "**He runs license plates just to find out names of people whose vehicles are parked at businesses/residences of people he doesn't like. Not for an investigation, but to gain personal Information about people for his political benefit. He runs criminal history reports through NCIC to try to find "dirt" on candidates or citizens supporting the candidates he does not like …. He orders officers to pull over and arrest/cite violations of citizens he feels are against him or he doesn't like. Not because they have committed a violation that he wants enforced**

**equally, but because it is someone he doesn't like. Clearly this is a misuse of his**

**power."** (emphasis added)

55.  Even after being given that letter from the ten whistle-blowing officers, the Town Council took no action to curtail the documented abuses of citizens.

56.    In addition, the officers presented their grievances yet again to the Town Council during a public meeting on June 14, 2011 (the meeting just prior to the June 28, 2011 meeting at issue in this complaint, where Mrs. Jones was removed from the podium and arrested), where John Stair, at the time Vice President of the Arizona Conference of Police and Sheriffs (AZCOPS), spoke on behalf of the ten Quartzsite officers, and testified about the seriousness of the allegations against Chief Gilbert, quoting from their May 10, 2011 letter (beginning at the 36:40 mark of the video available online at http://www.youtube.com/watch?v=R_pa3RPsrX8&feature=youtu.be

57.    At the 42.38 minute mark of that video, Mr. Stair notes that the Town of Quartzsite, in the wake of the allegations against Chief Gilbert, is not following its own policy of placing an officer on administrative leave when serious allegations of criminal wrongdoing are brought against the officer.  Mr. Stair urged the Town to place Chief Gilbert on administrative leave during the pending investigation into the alleged wrongdoing.

58.    Despite the serious allegations brought by the ten Quartzsite officers against their own Chief, and despite ongoing investigations into the alleged wrongdoing by Chief Gilbert by the State of Arizona and by the F.B.I, the Town of Quartzsite has not placed Chief Gilbert, or any of the other officers accused of violating the rights of citizens and accused of criminal wrongdoing, on administrative leave.

59.    In fact, while Mr. Stair was still speaking at the June 14, 2011 meeting, rather than giving proper consideration to those serious allegations, the Town Council,

except for the Mayor, began leaving their seats and walking out of the meeting, making it very clear that the Town Council had no interest in hearing the officers serious allegations of abuse of civil rights and corruption, and clearly expressing their intent to yet again do nothing to reign in the Chief and his complicit officers.

60.     Thus, despite being warned repeatedly that the Chief and his remaining complicit officers were violating the rights of the citizens of Quartzsite, the Town Council not only did nothing to prevent any further abuse, they in fact ordered that abuse to continue by voting to deny Jennifer her right to free speech and ordering her removal from the subsequent meeting on June 28, 2011.

61.     The Town Council knowingly failed to exercise proper oversight and discipline of the Police Department, and is in fact directly and intentionally complicit in the violations of Mrs. Jones rights, in a long pattern of false arrest and false charges.

62.     In Mrs. Jones' case, the harassment had previously intensified after she announced her candidacy for Town Council, including three arrests and multiple misdemeanor charges even before the June 28, 2011 arrest, and a later arrest in December, 2011, all of which where subsequently dismissed.   She has also suffered a string of erroneous zoning violation citations, which were also dismissed.   And she has suffered an ongoing unjust and baseless denial of a permit to conduct her pet grooming business, with town employees specifically instructed to always deny her a permit, even before she has applied.

63.     That harassment by means of wrongful arrest, trumped up citations, and petty denial of a permit for her business, continues to this day, in an ongoing avalanche.

64.     On January 3, 2012, La Paz County Attorney Samuel Vederman sent a letter to F.B.I. agent Frank Farley of the Public Corruption Unit, requesting that the F.B.I. conduct an investigation into criminal wrongdoing by Chief Gilbert and the Quartzsite Police Department, stating: "**I believe the circumstances warrant an investigation for the following reasons .... Chief Jeff Gilbert has requested felony charges against certain citizens for which I believe no criminal conduct occurred, or, at the very least, did not rise to the level of felony conduct: Russell Sias (Aggravated Assault on a Peace Office), Jennifer Jones (Influencing a Witness), Michael Roth  (Resisting Arrest) and Ed Foster (Obstructing a Criminal Investigation) .... The Town, through Councilwoman Patricia Anderson, publicly criticized this office for declining to prosecute Michael Roth for an incident that took place at a Town Council meeting in June 2011, it is the same incident in Which Chief Gilbert requested this office charge Mr. Roth with felony Resisting Arrest.**" Mr. Vederman's letter is available online at http://aview.info/A-View/Library/PDF/La%20Paz/VEDERMAN/Vederman-12-01-03-FBI-letter.pdf

-20-

## II. Claims

### FIRST CAUSE OF ACTION

### FIRST AMENDMENT RIGHT TO FREE SPEECH, PRESS AND ASSEMBLY (All Defendants)

65. Plaintiff Jones incorporates by reference the allegations of the preceding paragraphs as though set forth at length herein.

66. Mrs. Jones's actions and speech while attending the June 28, 2011 Town Council meeting are expression and action that is protected by the First Amendment to the United States Constitution.

67. Defendants violated the First Amendment free speech, free assembly, and free press rights of Mrs. Jones when, without any warning or attempt at instruction to her, they had her forcibly removed from the podium, in direct violation of orders and instructions of the presiding officer, the Mayor, while Mrs. Jones was peaceably speaking during her turn to speak after being recognized by the Mayor as having the floor, and by arresting her with no probable cause to do so. Chief Gilbert, following the direction of defendants on the Town Council and Town Staff, supervised as his two officers, Paterson and Garcia, removed and arrested Mrs. Jones for no apparent reason other than her constitutionally protected political speech which was critical of Town policies and actions.

68. As is well documented by the above noted letter of the ten Quartzsite officers as well as the letter to the F.B.I. from the La Paz County Attorney, Mrs. Jones

was targeted for removal and arrest by the Defendants, in an ongoing pattern of false arrest, false charges, and harassment, all because of her political free speech and press activities – her opposition to the Town and to the Policies of Chief Gilbert.   These acts were done with malicious intent, thus punitive damages are appropriate.

69.   Defendants' actions and omissions, as more fully described in the factual section of this Complaint, constitute violations of Plaintiff's rights, privileges and immunities, as secured by the First, Fourth and Fourteenth Amendments to the United States Constitution.   Said rights, privileges and immunities include the right to free speech and press, as well as the right to peacefully assemble, the right to participate in the political process, and the right to criticize public officials and the conduct and procedures of law enforcement officials.

## SECOND CAUSE OF ACTION-FOURTH AMENDMENT RIGHT TO BE FREE FROM UNREASONABLE SEARCHES, SEIZURES, FALSE ARREST, AND FALSE IMPRISONMENT (All Defendants)

70.   Plaintiff Jones incorporates by reference the allegations of the preceding paragraphs as though set forth at length herein.

71.   Defendants' actions and omissions, as more fully described in the factual section of this Complaint, constitute violations of Plaintiff's rights, privileges and immunities, as secured by the Fourth and Fourteenth Amendments to the United States Constitution.   Said rights, privileges and immunities include the right to bodily integrity, the right to be free from unreasonable searches and seizures and the right to

-22-

be free from false arrest and imprisonment.   Defendants' acts were done with malicious intent, thus punitive damages are appropriate.

### THIRD CAUSE OF ACTION
### FIRST AMENDMENT RIGHT TO BE FREE FROM RETALIATION (All Defendants)

72.      Plaintiff incorporates by reference the allegations of the preceding paragraphs as though set forth at length herein.

73.      The participation in the political process, commentary and criticizing of public officials and policy, and political demonstrations, is expression and action that is protected by the First Amendment to the United States Constitution.

74.      Defendants' detention, arrest, and imprisonment of Mrs. Jones for engaging in constitutionally protected speech and political activity constituted unlawful retaliation in violation of her First Amendment rights.   These acts were done with malicious intent, thus punitive damages are appropriate.

### FOURTH CAUSE OF ACTION
### FOURTH AMENDMENT RIGHT TO BE FREE FROM MALICIOUS PROSECUTION (All Defendants)

75.      Plaintiff incorporates by reference the allegations of the preceding paragraphs as though set forth at length herein.

76.      Defendants' actions in authorizing and/or directing and requesting the filing of criminal charges against the Plaintiff without probable cause violated

Plaintiff's Fourth Amendment right to be free from malicious prosecution. These acts were done with malicious intent, thus punitive damages are appropriate.

### FIFTH CAUSE OF ACTION
### FAILURE TO TRAIN, ENACT AND IMPLEMENT POLICIES TO PREVENT ABUSE, SUPERVISE AND DISCIPLINE (Town of Quartzsite)

77.    The failure of Defendant Town of Quartzsite to properly train, enact policies to prevent abuse of civil rights, and failure to supervise and discipline police officers to prevent abuse and violation of constitutionally protected rights, even in the face of overwhelming evidence of abuse and violation of rights, to the level of criminal activity, constitutes deliberate and willful indifference to the rights of those who come into contact with the Quartzsite Police Department.

78.    Plaintiff's injuries were the direct and proximate result of Defendant Town of Quartzsite's failure to provide training and supervision to the police officers serving in its police department, and failure to place Chief Gilbert on administrative leave even after requests to do so by ten of the Quartzsite Police Department officers and by AZCOPS, even after the initiation of formal state investigations and even after being given a copy of the letter to the F.B.I. from La Paz County Attorney Samuel Vederman, requesting a federal criminal investigation for corruption and abuse of power.

79.    The need for effective training and supervision of the individual Defendants, as well as the need to place Chief Gilbert and the other complicit officers

on administrative leave pending investigation,  was  and should have been plainly
obvious to the Town of Quartzsite policymakers.

80.      Defendants' actions and omissions, as more fully described in the
factual section of this Complaint, constitute violations of the rights, privileges and
immunities guaranteed by the First, Fourth and Fourteenth Amendments to the United
States Constitution. Said rights privileges and/or immunities include right of free
speech and engaging in the political process, the right to a free press, the right to be free
from unreasonable searches and seizures and the right to bodily integrity.  These acts
were done with malicious intent, thus punitive damages are appropriate.

SIXTH CAUSE OF ACTION
INTENTIONAL INFLICITON OF EMOTIONAL DISTRESS (All
Defendants)

81.  As set forth in the facts section of this complaint, the above well
documented and systemic abuse of power, intimidation, and wrongful arrest, false
arrest, false charges, and systematic use of the administrative process as a tool of
oppression and intimidation were done with overt, malicious intent to stifle, chill, and
violate Mrs. Jones rights, privileges and immunities guaranteed by the First, Fourth and
Fourteenth Amendments to the United States Constitution by causing her emotional
distress. Said rights privileges and/or immunities include right of free speech and
engaging in the political process, the right to a free press, the right to be free from
unreasonable searches and seizures and the right to bodily integrity.  There is a very
well documented, overwhelmingly supported, clear pattern of intentional targeting of

Mrs. Jones for harassment, intimidation, and intentional infliction of emotional distress in an attempt to chill her speech, silence her, ruin her political campaigns and her business in an attempt to induce her to leave town, all of which were done with malicious intent. Thus, punitive damages are appropriate.

**Demand and Prayer for Relief** Wherefore, Plaintiff respectfully requests that the Court:

1.   Exercise jurisdiction over this action;

2.   Award appropriate compensatory damages against all Defendants;

3.   Award appropriate punitive damages against each of the Defendants since these acts were done with malicious intent, thus punitive damages are appropriate; and

4.   Grant such other relief as may be appropriate, including the award of reasonable attorneys' fees, litigation expenses, and costs.

JURY DEMAND

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED this 27th day of June, 2012.

Jennifer Marie Jones
Mailing address: P.O. Box 1320
Quartzsite, Arizona, 85346
Residence address: La Posa North LTVA
Quartzsite, Arizona, 85346
(legal residence, but no mail service)
(928) 785-6318
thedesertfreedompress@yahoo.com

-26-