WO

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer Jones, | No. CV-12-01383-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Town of Quartzsite, et al., | |
| Defendants. | |

Pending before the Court is Defendants Town of Quartzsite ("Quartzsite"), et al.'s (collectively, the "Defendants"), Motion for Judgment on the Pleadings. (Doc. 22). Plaintiff Jennifer Jones filed a Response (Doc. 31) and Defendants filed a Reply (Doc. 32). The Court now rules on the Motion.

## I.    BACKGROUND[1]

On June 28, 2011, Plaintiff attended a Quartzsite town council meeting. (Doc. 1 ¶ 19). The remaining six individually named defendants also attended the meeting: Joe Winslow, Quartzsite town council member; Alexandra Taft, town manager; Albert Johnson, assistant town manager; Jeffrey Gilbert, Chief of the Quartzsite Police Department; Officer Rick Paterson of the Quartzsite Police Department; and, Officer

---

[1] "When considering a Rule 12(c) dismissal, we must accept the facts as pled by the non-movant," here, Plaintiff. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1053 (9th Cir. 2011). Thus, the facts set forth below have not been determined judicially, but are rather what the Court thinks to be a fair summary of the Complaint's (Doc. 1) allegations.

Fabiola Garcia of the Quartzsite Police Department. (*Id.* ¶¶ 6–11). Mayor Foster moderated the meeting. (*Id.* ¶ 25).

During the public comment portion of the meeting, Plaintiff approached the front stage and microphone. (*Id.* ¶ 23–25). After being recognized by Mayor Foster, Plaintiff began to peaceably criticize the town council. (*Id.* ¶¶ 25–26). Within one minute, Defendant Winslow interrupted Plaintiff and made an oral motion to have Plaintiff ejected from the meeting for an unidentified procedural violation. (*Id.* ¶¶ 26–28). Over Mayor Foster's objection, Defendant Winslow then stated that a majority of the town council supported the motion and told Plaintiff "you may leave, or you may be escorted out." (*Id.* ¶ 28).

Next, Defendants Chief Gilbert and Officers Garcia and Paterson approached Plaintiff and attempted to take the microphone from her. (*Id.* ¶ 29). Mayor Foster continued to object to Plaintiff's removal and the officers retreated. (*Id.*). Mayor Foster told Plaintiff to continue speaking. (*Id.* ¶ 31).

During this time, the town council continued voting on the motion to remove Plaintiff from the meeting. (*Id.* ¶ 30). After completing the vote in favor of removing Plaintiff, Defendant Winslow stated that "the majority of this council has moved that [Plaintiff] be removed." (*Id.* ¶ 31). Mayor Foster continued to object to Plaintiff's removal. (*Id.* ¶ 31). During the confusion, Defendants Johnson and Taft briefly gestured acquiescence to Plaintiff's removal to the officers present. (*Id.* ¶¶ 32–33).

Defendants Chief Gilbert and Officers Garcia and Paterson again approached Plaintiff, removed the microphone from her hand, and Defendant-Officers Garcia and Paterson forcibly removed Plaintiff from the room. (*Id.* ¶ 34). Meanwhile, Mayor Foster, Defendant Winslow, Defendant Gilbert, and various other people were speaking to each other and calling for order. (*Id.* ¶¶ 34–35).

After removing Plaintiff from the town council meeting, Defendant-Officers Garcia and Paterson arrested Plaintiff for disorderly conduct. (*Id.* ¶¶ 40–41). The charge was later dismissed. (*Id.* ¶ 41). In the process of Plaintiff's removal and arrest, Plaintiff

suffered an injury to her left elbow. (*Id.* ¶¶ 34, 39, 42–46).

Plaintiff also alleges that previously, on October 14, 2010, the Quartzsite Town Council, Mayor Foster, and Defendant Chief Gilbert underwent training about proper procedure for open town council meetings. (*Id.* ¶¶ 13–17). Specifically, they were trained that Mayor Foster presides at the town meetings and determines procedures and rules for the meeting. (*Id.*).

Plaintiff further nonspecifically alleges that both prior to and after the June 28, 2011 town council meeting, Defendant Chief Gilbert had harassed various unidentified political opponents. (*Id.* ¶¶ 49–54).

On June 27, 2012, Plaintiff filed the instant six-count Complaint alleging First and Fourth Amendment violations, intentional infliction of emotional distress, and municipal liability through a failure to train, supervise, and discipline Quartzsite police officers. (Doc. 1).

## II.    LEGAL STANDARD

A Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c) is "functionally identical" to a Rule 12(b)(6) Motion to Dismiss, thus "the same standard of review applies to motions brought under either rule." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n. 4 (9th Cir. 2011) (internal quotation omitted).

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Also, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Id.* Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant acted unlawfully. *Id.* "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (citing *Twombly*, 550 U.S. at 557).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1202, pp. 94, 95 (3d ed. 2004)). Thus, Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 555).

In deciding a motion to dismiss, the Court must construe the facts alleged in the complaint in the light most favorable to the drafter of the complaint and must accept all well-pleaded factual allegations as true. *Shwarz*, 234 F.3d at 435; *Cafasso*, 637 F.3d 1053 ("[w]hen considering a Rule 12(c) dismissal, we must accept the facts as pled by the non-movant"). Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## III.    ANALYSIS

Plaintiff's Complaint (Doc. 1) alleges four causes of action against all Defendants under 42 U.S.C. § 1983: Counts I and III, First Amendment violations of free speech, press, and assembly rights, and retaliation (*id.* at 21–23); and Counts II and IV, Fourth Amendment violations via false arrest and malicious prosecution (*id.* at 22–24). Plaintiff also alleges in Count V a § 1983 failure to train, supervise, and discipline cause of action

against Quartzsite only. (*Id.* at 24–25). Finally, Plaintiff alleges in Count VI an Arizona state law cause of action against all Defendants for intentional infliction of emotional distress. (*Id.* at 25–26).

### A.     Counts I & III: First Amendment Claims

Plaintiff alleges in Counts I and III of her Complaint (Doc. 1 at 21–23, ¶¶ 65–69, 72–74) that all Defendants: (1) violated Plaintiff's "right to free speech;" and (2) subjected Plaintiff to a retaliatory arrest because of her speech (Doc. 31 at 4–7).

### 1.     Count I: First Amendment Free Speech

Plaintiff alleges that Defendants ejected her from the June 28, 2011 town council meeting in an effort to suppress her speech critical of the town council. Defendants, however, argue that Plaintiff's Complaint actually alleges that Defendants merely enforced the town council's rules of procedure when ejecting Plaintiff. (Doc. 22 at 7–10; Doc. 32 at 3–4).

Under Ninth Circuit law, city council meetings, "once opened, have been regarded as public forums, albeit limited ones." *White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir. 1990) (en banc). "A council can regulate not only the time, place, and manner of speech in a limited public forum, but also the content of speech—as long as content-based regulations are viewpoint neutral and enforced that way." *Norse v. City of Santa Cruz*, 629 F.3d 966, 975 (9th Cir. 2010) (en banc). However, rules of decorum are constitutional if they "only permit[ ] a presiding officer to eject an attendee for actually disturbing or impeding a meeting." *Acosta v. City of Costa Mesa*, 718 F.3d 800, 811 (2013) (quoting *Norse*, 629 F.3d at 976).

Although the standard for disruption is relatively low, a disruption must in fact have occurred. "Actual disruption means actual disruption. It does not mean constructive disruption, technical disruption, virtual disruption, *nunc pro tunc* disruption, or imaginary disruption. The City cannot define disruption so as to include non-disruption to invoke the aid of *Norwalk*." *Norse*, 629 F.3d at 976. "The Supreme Court long ago explained that 'in our system, undifferentiated fear or apprehension of disturbance is not enough to

overcome the right to freedom of expression.' " *Id.* at 979 (Kozinski, J. concurring) (quoting *Tinker v. De Moines Ind. Cmty. Sch. Dist.*, 393 U.S. 503, 508 (1969)). At a minimum, the disturbance must be something more than the bare violation of a rule. *Dowd v. City of Los Angeles*, CV 09-06731 DDP SSX, 2013 WL 4039043, at *17 (C.D. Cal. Aug. 7, 2013).

Here, the factual allegations in Plaintiff's Complaint contend that Plaintiff spoke during the public comment portion of the town council meeting. (Doc. 1 ¶¶ 23, 25). Plaintiff contends that she did not begin speaking until Mayor Foster (who presided over the meeting) duly recognized Plaintiff. (*Id.* ¶ 25). Plaintiff further contends that, once recognized and handed the microphone, Plaintiff began to peaceably criticize the town council. (*Id.* ¶¶ 25–26). Plaintiff further contends that, within one minute, Defendant Winslow interrupted Plaintiff and made an oral motion to have Plaintiff ejected from the meeting for an unidentified procedural violation. (*Id.* ¶¶ 26–28). Plaintiff alleges that Defendant Winslow then stated that a majority of the town council supported the motion and told Plaintiff "you may leave, or you may be escorted out." (*Id.* ¶ 28). Plaintiff alleges that after being told to continue by Mayor Foster, Defendant Winslow apparently completed the town council vote and claimed a majority supported the motion, and then Defendant-Officers Garcia and Paterson removed Plaintiff from the town council meeting. (*Id.* ¶¶ 30–34).

If true, Plaintiff's non-conclusory factual assertions support her claim that she was not acting disruptively at the time Defendants interrupted her speech and removed her from the town council meeting. Furthermore, Defendant Winslow's invocation of an unspecified procedural rule immediately followed Plaintiff's attempt to speak critically of the town council. Thus, the Court reasonably infers that Plaintiff alleges viewpoint discrimination in Defendants' restriction of her speech. However, even if Defendants acted solely to cure Plaintiff's unidentified procedural violation, Defendants' actions may have run afoul of applicable law because Plaintiff alleges that she was speaking peacefully about a matter of town-importance after being duly recognized to speak by the

moderator of the meeting (*i.e.* she was not acting disruptively). *See Norse*, 629 F.3d at 976 (requiring actual disruption before the city can restrict speech during a public comment period). Therefore, the Court finds that Plaintiff states a claim against all Defendants with regard to Count I.

The Court notes that in their motion, Defendants generally argue that Count I fails to state a claim, but Defendants do not attempt to disambiguate the actions of any specific defendant. (*See* Doc. 22 at 9–10). In their Reply, however, Defendants inchoately argue that "only Defendant Winslow's actions have a close temporal relationship to Plaintiff's statements." (Doc. 32 at 4). The entire alleged event, however, lasted only a few minutes. Thus, the Court finds it reasonable to infer that there was a temporal relationship between Plaintiff's speech and the actions of all Defendants—not just Defendant Winslow. Therefore, on the incipient arguments currently before the Court, the Court finds that Plaintiff's Complaint sufficiently pleads Count I against all Defendants, and not just Defendant Winslow.

Accordingly, with regard to Count I, the Court denies Defendants' Motion for Judgment on the Pleadings.

### 2.     Count III: First Amendment Retaliatory Arrest

Plaintiff alleges that Defendants subjected her to a retaliatory arrest because of her speech at the June 28, 2011 town council meeting. (Doc. 31 at 4–7). Specifically, Plaintiff alleges that Defendants Winslow, Johnson, and Taft supervised her arrest, Defendant Chief Gilbert directed her arrest, and Defendant-Officers Garcia and Paterson carried out her arrest. (Doc. 31 at 6–7).

To demonstrate a claim for retaliatory arrest in violation of Plaintiff's First Amendment rights, Plaintiff "must provide evidence showing that (1) Defendants possessed an impermissible motive to interfere with her First Amendment rights, (2) Defendants' conduct would chill a person of ordinary firmness from future First Amendment activities, and (3) that the Defendants would not have engaged in the conduct in question but for the retaliatory motive." *Dowling v. Arpaio*, 858 F. Supp. 2d

1063, 1071 (D. Ariz. 2012) (citing *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999)). Furthermore, Plaintiff

> must allege facts ultimately enabling [her] to "prove the elements of retaliatory animus as the cause of injury," with causation being "understood to be but-for causation." *Hartman v. Moore*, 547 U.S. 250, 260 (2006); *see id.* ("It may be dishonorable to act with an unconstitutional motive and perhaps in some instances be unlawful, but action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway.").

*Lacey v. Maricopa Cnty.*, 693 F.3d 896, 917 (9th Cir. 2012).

### a.      Defendants Winslow, Taft, and Johnson

In Plaintiff's Response, Plaintiff implies that her Complaint alleges a theory of supervisory liability for Defendants Winslow, Taft, and Johnson. (Doc. 31 at 6; *see* Doc. 32 at 5–6). To the extent that Plaintiff alleges that Defendants Winslow, Taft, and Johnson's official positions (as town council member, town manager, and assistant town manager) render them vicariously liable for Defendant-Officers Garcia and Paterson's arrest of Plaintiff, Plaintiff is mistaken. Simply stated, "Section 1983 suits, like *Bivens* suits, do not support vicarious liability. '[E]ach government official, his or her title notwithstanding, is only liable for his or her own misconduct.' " *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012), *cert. denied*, 134 S. Ct. 70 (2013) (quoting *Iqbal*, 556 U.S. at 677). Conversely, to the extent that Plaintiff's Complaint alleges a theory of supervisory liability predicated on Defendants Winslow, Taft, and Johnson actually *directing* Defendant-Officers Garcia and Paterson to arrest Plaintiff, a cause of action could exist. *See Lacey*, 693 F.3d at 917 ("It is hard to conceive of a more direct assault on the First Amendment than public officials ordering the immediate arrests of their critics.").

Here, the Court's analysis of First Amendment retaliation must be limited to Plaintiff's arrest because expanding Count III to her mere removal from the meeting is duplicative of Count I. (*See* Doc. 31 at 4–7 (Plaintiff describes Count I as removal from the meeting and Count III as her arrest)). Focusing solely on Plaintiff's arrest, the Court

notes that Plaintiff's Complaint does not allege that Defendants Winslow, Taft, or Johnson ever specifically directed or even knew that Defendant-Officers Garcia and Paterson would arrest Plaintiff.[2] Instead, the non-conclusory factual allegations in Plaintiff's Complaint contend that during his efforts to interrupt Plaintiff's speech, Defendant Winslow told Plaintiff "you may leave or you may be *escorted* out." (Doc. 1 ¶ 28 (emphasis added)). Shortly thereafter, Plaintiff contends that Defendant Winslow stated "the majority of this council has moved that she be *removed*." (*Id.* ¶ 31 (emphasis added)). Plaintiff further alleges that Defendant Johnson then gestured with his thumb to direct the officers to *remove* Plaintiff from the podium. (*Id.* ¶ 32 (emphasis added)). Plaintiff alleges that Defendant Taft "consent[ed] to having [Plaintiff] forcibly *removed* from the meeting," and "nodded to [Defendant Chief Gilbert] to proceed to *remove* [Plaintiff] from the podium." (*Id.* ¶ 33 (emphasis added)). Finally, Plaintiff alleges that Defendant-Officers Garcia and Paterson did not arrest, handcuff, or place her in a holding cell until *after* her removal from the town council meeting (and therefore outside the presence of the remaining defendants). (*Id.* ¶¶ 34, 39–42).

Although Plaintiff's Complaint generally alleges that she had been harassed by the town council and Defendant Chief Gilbert, the allegations are both conclusory and non-specific to either the June 28, 2011 meeting or Defendants Winslow, Taft, and Johnson. Moreover, the remaining non-conclusory factual allegations in the Complaint, even if true, fail to support a reasonable inference that Defendants Winslow, Taft, and Johnson directed or otherwise participated in Defendant-Officers Garcia and Paterson's arrest of Plaintiff. Thus, Plaintiff has failed to allege sufficient facts to support her theory of supervisory liability against Defendants Winslow, Taft, and Johnson for the allegedly retaliatory arrest. Accordingly, Defendants Winslow, Taft, and Johnson are entitled to dismissal of Count III.

---

[2] Indeed, Plaintiff's Complaint fails to allege that Winslow, Taft, or Johnson even had the authority to order Quartzsite police officers to arrest Plaintiff.

**b.      Defendants Chief Gilbert, Garcia, and Paterson**

Preliminarily, the Court notes that, like with Defendants Winslow, Taft, and Johnson, Plaintiff's Complaint does not plead sufficient non-conclusory facts to support even a reasonable inference that Defendant Chief Gilbert participated in the allegedly retaliatory arrest. At worst, Defendant Chief Gilbert participated in Plaintiff's removal from the meeting, but there is no specific factual allegation that he either knew or directed Defendant-Officers Garcia and Paterson to arrest Plaintiff after removing her from the meeting. Plaintiff specifically alleges, however, that Defendant-Officers Garcia and Paterson participated in the allegedly retaliatory arrest. (*Id.* ¶¶ 34, 39–42). Therefore, the Court examines the Complaint to determine whether it alleges all three elements of a First Amendment retaliatory arrest claim against Defendant-Officers Garcia and Paterson.

Initially, the Court notes that Plaintiff's arrest clearly satisfies element two, whether Defendants' conduct would chill a person of ordinary firmness from future First Amendment activities. *See Lacey*, 693 F.3d at 917 (In the circumstances of this case, to state that '[a]rresting someone in retaliation for their exercise of free speech rights' is sufficient to chill speech is an understatement." (quoting *Beck v. City of Upland*, 527 F.3d 853, 871 (9th Cir. 2008))).

With regard to the first element, an impermissible motive to interfere with Plaintiff's First Amendment rights, the Court notes that Plaintiff's Complaint contains no non-conclusory allegations concerning an improper motive. Rather, Plaintiff requests that the Court infer an improper motive:

> The Complaint alleges that both officers continued to drag [Plaintiff] away from the podium despite the mayor calling for the officers to stop. [(Doc. 1 ¶ 34)]. This leads to the reasonable inference that they were acting contrary to the Mayor's instruction and under the same retaliatory motives guiding the other town council members.

(Doc. 31 at 7).

Plaintiff's requested inference is not reasonable for two reasons. First, Plaintiff's support refers to the removal of Plaintiff from the meeting (the subject of Count I), not

her arrest (the subject of Count III). Second, stripped to non-conclusory factual allegations, Plaintiff's Complaint merely alleges that Defendant-Officers Garcia and Paterson initially listened to Mayor Foster's[3] objections to Plaintiff's removal from the meeting. (Doc. 1 ¶ 29). However, Plaintiff alleges that the town council then apparently passed a motion to remove Plaintiff from the meeting. (*Id.* ¶ 31). Thereafter, Defendant-Officers Garcia and Paterson obeyed the town council motion and ignored Mayor Foster's objections. (*Id.* ¶¶ 31, 34). Absent any other non-conclusory factual allegation supporting an inference of impermissible motive, these "facts" indicate only that Defendant-Officers Garcia and Paterson obeyed the meeting's moderator—Mayor Foster—until the town council passed an apparently superseding motion calling for Plaintiff's removal. Such actions do not, themselves, indicate animus and do not reasonably impart any of the town council's alleged animus onto Defendant-Officers Garcia and Paterson.

Lastly, with regard to the third element, but-for causation, because the Court finds no reasonable inference or factual support for the existence of an improper motive, there can be no but-for causation. Thus, Plaintiff's Complaint fails to establish the first or third elements of a First Amendment retaliatory arrest claim against Defendant-Officers Garcia and Paterson. Additionally, as described above, Plaintiff's Complaint fails to state a First Amendment retaliatory arrest claim against Defendant Chief Gilbert. Accordingly, Defendants Chief Gilbert, Garcia, and Paterson are entitled to dismissal of Count III.

In sum, all Defendants—Winslow, Taft, Johnson, Gilbert, Garcia, and Paterson—are entitled to dismissal of Count III. Accordingly, with regard to Count III, the Court grants Defendants' Motion for Judgment on the Pleadings.

### B.   Counts II & IV: Fourth Amendment Claims

Plaintiff alleges in Counts II and IV of her Complaint (Doc. 1 at 22–24, ¶¶ 70–71, 75–76) that all Defendants violated Plaintiff's Fourth Amendment rights via false arrest

---

[3] Mayor Foster moderated the public comment portion of the meeting and had recognized Plaintiff to speak. (*Id.*  ¶¶ 23–25).

1   and malicious prosecution from her June 28, 2011 arrest. (Doc. 31 at 7–12). The Court
2   notes, however, that both parties comingle their Fourth Amendment arguments in the
3   motion and associated briefing. (Doc. 22 at 10–12; Doc. 31 at 7–12; Doc. 32 at 7–9).
4   Instead of addressing the specific elements of either claim, Defendants generally argue
5   that (1) the Complaint does not state a Fourth Amendment claim against Defendants
6   Winslow, Taft, Johnson, or Chief Gilbert because they did not participate in Plaintiff's
7   arrest; and, (2) Defendants Chief Gilbert, Garcia, and Paterson are entitled to qualified
8   immunity. (Doc. 22 at 10–12; Doc. 32 at 7–9).

9           **1.      Defendants Winslow, Taft, Johnson, and Gilbert**

10          Plaintiff's Response argues that her Complaint alleges her Fourth Amendment
11  claims against Defendants Winslow, Taft, Johnson, and Chief Gilbert through a theory of
12  supervisory liability. (Doc. 31 at 7–10). Defendants, however, argue that Plaintiff's
13  Complaint does not allege sufficient facts that Defendants Winslow, Taft, Johnson, and
14  Chief Gilbert either participated in or directed the arrest of Plaintiff. (Doc. 22 at 10).

15          In response, Plaintiff cites to *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001),
16  for the proposition that "[a] supervisor may be liable under § 1983 only if there exists
17  either (1) his or her personal involvement in the constitutional deprivation, or (2) a
18  sufficient causal connection between the supervisor's wrongful conduct and the
19  constitutional violation." Plaintiff also cites to *Larez v. City of Los Angeles*, 946 F.2d
20  630, 646 (9th Cir. 1991), for the proposition that Defendants Winslow, Taft, Johnson, and
21  Chief Gilbert's "individual liability hinges upon [their] participation in the deprivation of
22  constitutional rights. But unlike the officers' involvement, which ordinarily is direct and
23  personal, [their] participation may involve the setting in motion of acts which cause
24  others to inflict constitutional injury."

25          Although these are both correct statements of the controlling law, Plaintiff's
26  citations fail to address the threshold requirement of both *Jeffers* and *Larez*: that
27  Defendants Winslow, Taft, Johnson, and Gilbert have supervisory authority over
28  Defendant-Officers Garcia and Paterson. Plaintiff's Response relies on conclusory

allegations that Defendants Winslow, Taft, Johnson, and Gilbert held "supervisory roles . . . [and] directed and caused Plaintiff's arrest." (Doc. 31 at 8). Plaintiff's Complaint, however, makes no specific factual allegation defining the duties or authority of a town council member acting alone, the town manager, or the assistant town manager (respectively Defendants Winslow, Taft, and Johnson). Although it is reasonable to infer that Defendant Chief Gilbert, as chief of police, held a supervisory role over Defendant-Officers Garcia and Paterson, the non-conclusory factual allegations in Plaintiff's Complaint do not support the same inference for Defendants Winslow, Taft, and Johnson.

At worst, Plaintiff's non-conclusory factual allegations support that Defendant Winslow initiated Plaintiff's removal from the meeting and Defendants Taft, Johnson, and Chief Gilbert acquiesced. However, as explained above, Plaintiff's Complaint does not allege that, whether specifically or through a reasonable inference, Defendants Winslow, Taft, Johnson, and Chief Gilbert ever actually directed or even knew that Defendant-Officers Garcia and Paterson would arrest Plaintiff.[4] Therefore, Plaintiff has failed to allege sufficient non-conclusory facts to form the basis of a supervisory liability claim against Defendants Winslow, Taft, Johnson, and Chief Gilbert for the alleged Fourth Amendment violations committed by Defendant-Officers Garcia and Paterson. Accordingly, Defendants Winslow, Taft, Johnson, and Chief Gilbert are entitled to dismissal of Count II and IV.

## 2.    Defendant-Officers Garcia and Paterson

Defendants argue that Defendant-Officers Garcia and Paterson are entitled to qualified immunity for their arrest of Plaintiff.[5] (Doc. 22 at 10–12; Doc. 32 at 8–9).

---

[4] In her Response, Plaintiff appears to argue that because the town council motion to remove Plaintiff may have broken the meeting's procedural rules, Defendants Winslow, Taft, Johnson, and Chief Gilbert violated Plaintiff's Fourth Amendment rights. (Doc. 8–10). Plaintiff's argument, however, is both irrelevant and illogical. Even if the town council motion did, in fact, violate the applicable procedural rules, such a fact does not create a reasonable inference that Defendants Winslow, Taft, Johnson, and Chief Gilbert intended, expected, or directed Defendant-Officers Garcia and Paterson to arrest Plaintiff *in addition* to removing her from the town meeting.

[5] Defendants also argue that Defendant Chief Gilbert is entitled to qualified immunity. However, because the Court dismisses the Fourth Amendment counts on the

There is a two-step test for resolving a qualified immunity claim: the "constitutional inquiry" and the "qualified immunity inquiry." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The "constitutional inquiry" asks whether, when taken in the light most favorable to the non-moving party, the facts alleged show that the official's conduct violated a constitutional right. *Id.* If so, a court turns to the "qualified immunity inquiry" and asks if the right was clearly established at the relevant time. *Id.* at 201–02. This second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* at 201. Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). A dispositive inquiry in the qualified immunity analysis "is whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). "Courts should decide issues of qualified immunity as early in the proceedings as possible, but when the answer depends on genuinely disputed issues of material fact, the court must submit the fact-related issues to the jury." *See Ortega v. O'Connor*, 146 F.3d 1149, 1154 (9th Cir. 1998).

In order to maintain her § 1983 claim of false arrest, Plaintiff must plead facts that would show that Defendant-Officers Garcia and Paterson arrested Plaintiff for disorderly conduct without probable cause. Similarly, in order to maintain her § 1983 claim of malicious prosecution, Plaintiff "must show that the defendants prosecuted her with malice and without probable cause, and that they did so for the purpose of denying her equal protection or another specific constitutional right." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995).

Notably, because a lack of probable cause is an element of both Fourth Amendment causes of actions alleged by Plaintiff, Defendant-Officers Garcia and

---

basis of a lack of supervisory liability, the Court does not determine whether Defendant Chief Gilbert is entitled to qualified immunity.

1   Paterson are entitled to qualified immunity if, under clearly established law, a reasonable

2   officer in their position could have believed probable cause existed to arrest and charge

3   Plaintiff with disorderly conduct. *See Saucier*, 553 U.S. at 202.

4           "Probable cause exists when there is a fair probability or
5           substantial chance of criminal activity." *United States v.*
            *Pataya Soriano*, 361 F.3d 494, 505 (9th Cir. 2004) (quoting
6           *United States v. Bishop*, 264 F.3d 919, 924 (9th Cir. 2001))
            (internal quotation marks omitted). "It is well-settled that 'the
7           determination of probable cause is based upon the totality of
            the circumstances known to the officers at the time of the
8           search.' " *Id.* (quoting *Bishop*, 264 F.3d at 924).

9   *Lacey*, 693 F.3d at 918.

10          Here, the non-conclusory allegations in Plaintiff's Complaint fail to support a

11  reasonable inference that Defendant-Officers Garcia and Paterson lacked probable cause.

12  The disorderly conduct statute in question, A.R.S. § 13-2904(A)(4), states that "[a]

13  person commits disorderly conduct if, with intent to disturb the peace or quiet of a

14  neighborhood, family or person, or with knowledge of doing so, such person . . . [m]akes

15  any protracted commotion, utterance or display with the intent to prevent the transaction

16  of the business of a lawful meeting, gathering or procession."

17          Plaintiff argues that her attempts to speak were neither protracted (lasting less than

18  one minute before interruption by Defendant Winslow) nor an intent to prevent the

19  transaction of the business of the town meeting (because she spoke peacefully during the

20  public comment portion in accordance with the Mayor's recognition of her right to speak

21  at the town meeting). (Doc. 31 at 11–12). These two factual allegations, however, are but

22  a small part of the allegations in Plaintiff's Complaint. Plaintiff alleges that Defendant

23  Winslow stated that Plaintiff had violated meeting procedure and requested Plaintiff

24  leave the stage or be escorted off. Plaintiff alleges that Defendant-Officers Garcia and

25  Paterson then initially approached Plaintiff, but retreated and let her continue speaking

26  after Mayor Foster, who was moderating the meeting, objected to Plaintiff's removal.

27  (Doc. 1 ¶ 29). Next, Plaintiff alleges that the town council apparently passed a motion to

28  remove Plaintiff from the meeting. (*Id.* ¶ 31). Thereafter, Defendant-Officers Garcia and

Paterson obeyed the town council motion and ignored Mayor Foster's continued objections. (*Id.* ¶¶ 31, 34). All the while, Plaintiff alleges that Mayor Foster, Defendant Winslow, Defendant Chief Gilbert, and various other people were speaking and calling for order.

Given the totality of these factual allegations, a reasonable officer could certainly have believed that Plaintiff was disrupting the legitimate business of the town meeting by violating some meeting procedure and refusing to leave despite the apparently valid town council motion calling for her removal. *See Norse*, 629 F.3d at 978 (granting qualified immunity to an officer for ejecting and arresting a citizen at a city council meeting in response to the city council's attempts to eject the citizen from council chambers). Additionally, to the extent that Plaintiff alleges that the previous town-training session specifically trained the town council, Mayor Foster, and Defendant Chief Gilbert that Mayor Foster ultimately had authority over procedural violations, Plaintiff does not allege that Defendant-Officers Garcia and Paterson were ever so trained. Thus, a reasonable officer could have believed that a majority-passed motion by the town council superseded the mayor's objections and required Plaintiff to leave the town council meeting.

Because a reasonable officer in Defendant-Officers Garcia and Paterson's position could have reasonably believed that probable cause existed to arrest Plaintiff for disturbing the peace, Defendant-Officers Garcia and Paterson pass the "qualified immunity inquiry." Therefore, Defendant-Officers Garcia and Paterson are entitled to qualified immunity against Plaintiff's false arrest and malicious prosecution claims. Accordingly, Defendant-Officers Garcia and Paterson are entitled to dismissal of Count II and IV.

In sum, all Defendants—Winslow, Taft, Johnson, Gilbert, Garcia, and Paterson—are entitled to dismissal of Counts II and IV. Accordingly, with regard to Counts II and IV, the Court grants Defendants' Motion for Judgment on the Pleadings.

C.     **Counts I–IV: Municipal Liability of Defendant Town of Quartzsite**

Plaintiff's Complaint specifically pleads Counts I–IV against Defendant Town of Quartzsite, in addition to the other six human defendants (and, where applicable, their respective spouses). (Doc. 1 at 21–24 (stating Counts I–IV are pleaded against "all defendants")). However, Plaintiff's Complaint does not specifically allege what theory of municipal liability Plaintiff pleads. Moreover, Plaintiff's Complaint explicitly alleges that each of the six human defendants acted in their individual capacities (Doc. 1 ¶¶ 6–11), further obfuscating Plaintiff's theory of municipal liability. The only clue in Plaintiff's Complaint appears to be found in paragraph five, which alleges that: "Defendant Town of Quartzsite . . . is a municipality organized under the laws of Arizona and owns, operates, manages, directs and controls the Quartzsite Police Department, which employed other defendants." (Doc. 1 ¶ 5). Apparently realizing the confusion engendered by the Complaint, Plaintiff's Response (Doc. 31 at 12–14) attempts to advance a theory of *Monell* liability predicated on Defendants Chief Gilbert, Winslow, Taft, and Johnson being "final policymakers" with regard to Plaintiff's removal from the town meeting and arrest.

1.     **Legal Standard**

"[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dept. of Soc. Servs. of the City of N.Y. et al.*, 436 U.S. 658, 691 (1978). Under *Monell*, municipal liability may be based on any of three theories: (1) an expressly adopted official policy; (2) a longstanding practice or custom; or (3) the decision of a person with final policymaking authority. *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004). With regard to the third option, "a local government may be held liable under § 1983 when 'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.' " *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992)). " 'There must, however, be evidence of a conscious,

affirmative choice' on the part of the authorized policymaker." *Id.* Moreover, "[i]t does not matter that the final policymaker may have subjected only one person to only one constitutional violation." *Lytle*, 382 F.3d at 983. "A municipality can be liable for an isolated constitutional violation when the person causing the violation has final policymaking authority." *Id.* (quoting *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999)).

Identifying a policy-making official is a question of law for the Court to decide by reference to state law, not one of fact to be submitted to the jury. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989); *see Gillette*, 979 F.2d at 1346 ("Whether a particular official has final policy-making authority is a question of state law.") (citing *Jett*, 491 U.S. at 737). Although the first step in identifying a final policymaker is examination of state law, "[d]epending on the circumstances . . . we may also look to the way a local government entity operates in practice." *Lytle*, 382 F.3d at 982–83 (citing *Jett*, 491 U.S. at 737) (trial judge must identify official policymakers based on "state and local positive law, as well as custom or usage having the force of law") (citation and quotation marks omitted)). "When determining whether an individual has final policymaking authority, [the court] ask[s] whether he or she has authority 'in a particular area or on a particular issue.' " *Id.* at 983 (emphasis in original) (quoting *McMillian v. Monroe County*, 520 U.S. 781, 785 (1997)).

### 2. Analysis

Preliminarily, the Court notes that Plaintiff's Complaint explicitly pleads her claims against Defendants Chief Gilbert, Winslow, Taft, and Johnson in their *individual* capacities, not in their *official* capacities. (Doc. 1 ¶¶ 6–11). Because the individuals' private actions, by definition, cannot be official Quartzsite policy, this deficiency in the Complaint, alone, vitiates Plaintiff's theory of *Monell* municipal liability. *See, e.g.*, *Rivera v. Cnty. of Los Angeles*, 745 F.3d 384, 389 (9th Cir. 2014) ("municipalities . . . can only be liable under § 1983 if an unconstitutional action 'implements or executes a policy statement, ordinance, regulation, or decision *officially* adopted and promulgated by that

body's officers.' " (quoting *Monell*, 436 U.S. at 690) (emphasis added)).

To the extent Plaintiff alleges that the removal and arrest of Plaintiff was officially adopted by Quartzsite, Plaintiff's Complaint lacks sufficient non-conclusory allegations to state a claim. First, the Complaint lacks any specific allegations that Defendants Gilbert, Winslow, Taft, and Johnson are official policymakers. Under Arizona law, Mayor Foster is Quartzsite's chief executive, A.R.S. § 9-236, and the town's powers are vested in the town council as a body, A.R.S. §§ 9-231 & 40. Plaintiff neither alleges any facts nor cites any authority suggesting that Defendant Winslow, as an individual town council member, can be a final policymaker. Similarly, Plaintiff does not even attempt to justify how Defendants Taft and Johnson (the town manager and assistant town manager, respectively) have final policymaking authority.

Furthermore, Plaintiff's Complaint explicitly and strenuously alleges that Mayor Foster—not the town council, town manager, assistant town manager, or police chief—possessed the legal right to moderate and control the town council meeting, including determining rules of procedure and when removal of a citizen is warranted. (Doc. 1 ¶¶ 13, 16–18). Thus, Plaintiff's non-conclusory factual allegations, when accepted as true, are inconsistent with stating a *Monell* municipal liability claim based on the individual actions of Defendants Winslow, Taft, and Johnson.

To the extent that Defendant Chief Gilbert can reasonably be inferred to generally be a final policymaker with regard to police conduct, Plaintiff's Complaint fails to state a claim. Notably, Plaintiff's Complaint fails to allege facts suggesting Defendant Chief Gilbert did anything more than acquiesce to Defendant-Officers Garcia and Paterson's removal of Plaintiff from the town meeting. Acquiescence, alone, does not constitute an official ratification or approval of the subordinate officers' actions. *See Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014) ("Ratification, however, generally requires more than acquiescence."). Furthermore, no non-conclusory factual allegation in the Complaint states or engenders a reasonable inference that Defendant Chief Gilbert intended, expected, or directed Defendant-Officers Garcia and Paterson to

1    arrest Plaintiff *in addition* to removing her from the town meeting.

2         In sum, Plaintiff's Complaint fails to sufficiently allege that Defendants Chief

3    Gilbert, Winslow, Taft, or Johnson acted with final policymaking authority vis-à-vis the

4    removal and arrest of Plaintiff on June 28, 2011. Therefore, Plaintiff's Complaint does

5    not plead a plausible theory of municipal liability under *Monell*. Accordingly, Defendant

6    Town of Quartzsite is entitled to dismissal of Counts I–IV and the Court grants

7    Defendants' Motion for Judgment on the Pleadings with respect to Defendant Quartzsite

8    on Counts I, II, III, and IV.

9         **D.    Count V: § 1983 Failure to Train, Supervise, and Discipline Claim**

10        Plaintiff's Complaint alleges a theory of municipal liability against Defendant

11   Quartzsite under § 1983 based upon Defendant Quartzsite's alleged failure to train,

12   supervise, and discipline Chief Gilbert and the members of the Quartzsite police

13   department. (*Id.* at 24–25). Because the only non-Chief Gilbert Quartzsite police officers

14   specifically alleged to have harmed Plaintiff are Defendant-Officers Garcia and Paterson,

15   the Court construes Count V as alleging a failure to train, supervise, and discipline

16   Defendants Chief Gilbert, Garcia, and Paterson.

17        Notably, in Plaintiff's Response (Doc. 31 at 12–14), Plaintiff appears to abandon

18   the failure to train, supervise, and discipline theory of municipal liability espoused in

19   Count V in favor of the *Monell* "final policymaker" theory discussed above. Nonetheless,

20   the Court will address Count V as pled in the Complaint.

21        With regard to a § 1983 failure to train or improper supervision, to prevail,

22   Plaintiff "must demonstrate that a municipal decision reflects deliberate indifference to

23   the risk that a violation of a particular constitutional or statutory right will follow the

24   decision." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 411

25   (1997); *see City of Canton, Oh. v. Harris*, 489 U.S. 378, 388 (1989) (improper training

26   requires a failure to train so inadequate that it "amounts to deliberate indifference to the

27   rights of persons" impacted by the training); *Dougherty v. City of Covina*, 654 F.3d 892,

28   900 (9th Cir. 2011) (sufficiently inadequate supervision of an employee may amount to

1   deliberate indifference for purposes of establishing § 1983 municipal liability). Like an

2   improper training or supervision claim, to prevail on a § 1983 failure to discipline claim,

3   Plaintiff must demonstrate deliberate indifference by the municipality. *Long v. City &*

4   *Cnty. of Honolulu*, 378 F.Supp.2d 1241, 1246–48 (D. Haw. 2005). Additionally, Plaintiff

5   must demonstrate previous grounds to discipline the individual employee, a municipal

6   policy not to discipline, and causation. *Id.*

7       Here, Plaintiff's Complaint contains no non-conclusory factual allegations

8   suggesting that, prior to the June 28, 2011 town meeting, the Town of Quartzsite acted

9   with deliberate indifference to potential constitutional violations at town council meetings

10  by Defendants Chief Gilbert, Garcia, or Paterson. Indeed, Plaintiff makes no allegations

11  regarding Defendant-Officers Garcia and Paterson outside of the June 28, 2011 incident

12  forming the basis of Plaintiff's suit.[6] Plaintiff does make some factual allegations (most

13  of which are conclusory) potentially implying a pattern of harassing behavior perpetrated

14  by Defendant Chief Gilbert against unidentified citizens of Quartzsite prior to the June

15  28, 2011 meeting. Those factual allegations, however, do not imply deliberate

16  indifference to Chief Gilbert's behavior at town council meetings because Plaintiff

17  explicitly (and in great detail) alleges that Quartzsite provided training to Chief Gilbert

18  (and others) regarding the parameters of their behavior and proper procedures at town

19  council meetings.

20      In sum, Plaintiff has failed to allege sufficient non-conclusory facts to form the

21  basis of a § 1983 failure to train, supervise, or discipline claim against Defendant

22  Quartzsite. Accordingly, Defendant Quartzsite is entitled to dismissal of Count V.

23      **E.    Count VI: Intentional Infliction of Emotional Distress**

24      Plaintiff alleges in Count VI of her Complaint (Doc. 1 at 25–26, ¶ 81) that all

25  Defendants intentionally inflicted emotional distress upon her through their various

26  constitutional violations alleged in the other five counts of the Complaint.

27

28      [6] When alleging that Chief Gilbert harasses political opponents, Plaintiff non-specifically refers to Chief Gilbert's "complicit officers." Plaintiff, however, does not attempt to identify Defendant-Officers Garcia or Paterson as such "complicit officers."

1         A claim for intentional infliction of emotional distress under Arizona law requires:

2    (1) "the conduct by defendant must be extreme or outrageous"; (2) "the defendant must

3    either intend to cause emotional distress or recklessly disregard the near certainty that

4    such distress will result from his conduct"; and (3) "severe emotional distress must

5    indeed occur as a result of defendant's conduct." *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*,

6    905 P.2d 559, 562–63 (Ariz. Ct. App. 1995) (internal citations and quotations omitted).

7         Defendants argue that Plaintiff fails to state a claim because Plaintiff's Complaint

8    does not contain any non-conclusory allegations demonstrating *any* of the three elements

9    of an intentional infliction of emotional distress claim. (Doc. 22 at 6–7; Doc. 32 at 1–3).

10        With specific regard to the third element—that Plaintiff actually suffered severe

11   emotional distress—the Court notes that Plaintiff's Complaint is devoid of any factual

12   allegations asserting that Plaintiff actually suffered emotional distress, let alone "severe"

13   emotional distress. (*See* Doc. 1). Indeed, the only specific mention of "emotional

14   distress" occurs in a single paragraph devoted to a summary of the intentional infliction

15   of emotional distress claim. (Doc. 1 ¶ 81). That sentence, however, is nothing more than a

16   conclusory allegation that Defendants intended to violate Plaintiff's various constitutional

17   rights "by causing her emotional distress." (*Id.*). Plaintiff's Response admits that "the

18   Complaint does not go into great detail about the nature of [Plaintiff's] emotional

19   distress," but argues that the Complaint "does describe many of the physical

20   manifestations of her injuries, and the impact they have had on her life" (Doc. 31 at 4

21   (citing Doc. 1 ¶¶ 43–46)). However, Plaintiff's cited paragraphs make factual allegations

22   related exclusively to Plaintiff's alleged physically-injured elbow. These paragraphs, as

23   well as the remainder of the Complaint, do not provide sufficient factual allegations for

24   the Court to draw a reasonable inference that Defendants' actions caused Plaintiff "severe

25   emotional distress."

26        Because Plaintiff failed to allege sufficient facts establishing that she suffered

27   severe emotional distress, Plaintiff's Complaint fails to state an intentional infliction of

28   emotional distress claim. Accordingly, the Court grants Defendants' Motion for

1    Judgment on the Pleadings with respect to Count VI.

2    **IV.    CONCLUSION**

3        Accordingly,

4        **IT IS ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc.

5    22) is GRANTED in part and DENIED in part, consistent with the reasoning above. With

6    respect to all defendants, Counts II, III, IV, V, and VI are dismissed, with prejudice.

7        Dated this 24th day of September, 2014.

8

9

10    _____

11                James A. Teilborg
                  Senior United States District Judge
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28